IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **PRIME INSURANCE COMPANY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.:  1:25-CV-_____ |
| v. ) | |
| ) | |
| **T&J PEST CONTROL, LLC and** ) | |
| **DIRENSHIA HUGHES,** ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Prime Insurance Company, states its Complaint for Declaratory Relief against Defendants, T&J Pest Control, LLC and Direnshia Hughes, as follows:

## PARTIES

1. Plaintiff, Prime Insurance Company ("Prime"), is a duly authorized surplus lines insurance company incorporated under the laws of the State of Illinois, with its principal place of business in the State of Utah.

2. T & J Pest Control, LLC ("T&J") is a limited liability company organized under the laws of the State of Alabama, with its principal place of business in Mobile, Alabama.  Upon information and belief, T&J's sole member is Terrell Hall, who is a citizen of the State of Alabama because his permanent residence is in Mobile County, Alabama.

3. Dirneshia Hughes is a citizen of the State of Alabama because her permanent residence is in Eightmile, Alabama.

## JURISDICTION AND VENUE

4. This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. Jurisdiction is predicated on diversity of citizenship, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

6. Venue is proper pursuant to 28 U.S.C. § 1391. T&J maintains its principal place of business in Mobile County, Alabama, and, upon information and belief, its sole member is a citizen of Alabama residing in Mobile County, Alabama. Likewise, Hughes resides in Mobile County, Alabama. *See* 28 U.S.C. § 81(c)(2).

7. The substantive laws of the State of Alabama apply because this case involves insurance coverage under a contract(s) of insurance issued and delivered to an Alabama limited liability company in the State of Alabama.

## GENERAL FACTUAL ALLEGATIONS

8. Prime incorporates each of the allegations set forth above as if fully set forth herein.

**A.     The Policies:**

9.     Prime issued an initial commercial liability policy excluding products and completed operations to T&J in the form of Policy No. 22020007 with effective dates of coverage from February 5, 2022, through February 5, 2023 (the "2022-2023 Policy"). (2022-2023 Policy, Ex. 1.)

10.    A subsequent Policy was issued to T&J in the form of Policy No. 23020017 with effective dates of coverage from February 5, 2023, through February 5, 2024 (the "2023-2024 Policy") (2023-2024 Policy, Ex. 2.)  The 2022-2023 Policy and 2023-2024 Policy shall be collectively referred to as the "Policies."

11.    There are provisions of the Policies that may impact coverage for the instant claim.

12.    First, the Policies contain the following relevant requirements:

**COMMERCIAL LIABILITY INSURANCE POLICY**

**PCL-00-01**

This COMMERCIAL LIABILITY INSURANCE POLICY (the "Policy") is a claims-made-and-reported insurance policy. This Policy is a manuscript policy, meaning it is a negotiated agreement between the Insured and the Insurer, and as such it differs significantly from claims-made or occurrence liability policies offered by other insurance companies. As a claims-made-and-reported insurance policy, this Policy contains very strict claims reporting requirements which must be followed as conditions precedent to coverage. Coverage is provided only for otherwise covered Claims which meet all of the following requirements:

    (1)    which are first made against an Insured during the Policy Period, and

    (2)    which result from an Accident occurring during the Policy Period, including the Retroactive Date you have selected as indicated in the Declarations or any Endorsement, and

    (3)    for which written notice is given directly to the Insurer during the Policy Period in accordance with the specific informational and timeliness requirements specified in Conditions section of the Policy.

The terms of this Policy are contractual and are not merely recitals and all information supplied by any Insured to obtain coverage, constitute warranties of the Insured to the Insurer.

In addition, coverage is strictly limited to those activities, operations and locations specifically listed in the Declarations or any Endorsements. Please read the entire Policy and all Endorsements carefully to determine your rights and duties and what is and is not covered.

(Policies, PCL-00-01, p. 1, Exs. 1, 2.)

    13.    Next, the Policies contain the following relevant insuring language:

### SECTION I - COVERAGE

A.    Insuring Agreement

    1.    Subject to all of the terms, limitations, conditions, definitions, exclusions, and other provisions of this Policy, we will pay Damages in excess of any SIR that you are legally obligated to pay because of Bodily Injury or Property Damage to which this Policy applies:

    a.    Should an Accident causing Bodily Injury or Property Damage result from those specified activities or operations to which this Policy is limited; and

  b. If such Accident occurs during the Policy Period (including any Policy Period extended by a specifically identified Retroactive Date) stated on the Declarations or any Endorsement within the United States of America or its territories; and

  c. A Claim arising out of the Accident is made against you and reported to us in writing during the Policy Period and any applicable SIR has been timely paid.

The loss or the accident date will be considered to have occurred on the day the Insured provided and completed the service which resulted in Bodily Injury or Property Damage, regardless of when the Bodily Injury or Property Damage is first discovered, first manifest or reported.

(Policies, PCL-00-01, p. 1, Exs. 1, 2.)

  14. Furthermore, the Policies contain the following relevant Exclusions:

B. Exclusions

  This Policy does not cover, and we will not be obligated to defend you against or pay Damages on your behalf for, any of the following:

  . . .

  26. Bodily Injury and Property Damage occurring away from premises you own or rent, arising out of:

  a. Your Product, if it is no longer in your physical possession; or

  b. Your Work, once it has been completed; or

  c. Any reliance upon any warranty or representation made concerning "a" or "b."

  27. Property Damage to Your Work, including but not limited to claims of faulty, incomplete or deficient workmanship, regardless of

5

whether such damage occurs or is discovered after that work has been completed.

(Policies, PCL-00-01, pp. 7, Exs. 1, 2.)

15.    Additionally, the Policies contain the following relevant reimbursement requirements.

### SECTION VII – REIMBURSEMENT

In the event we provide coverage for a Claim and it is at any time determined that the Claim, or any part thereof, is not covered under the Policy, we expressly reserve the right to seek reimbursement of any Damages and/or Claim Expenses associated with any such Claim from any Insured.

(Policies, PCL-00-01, p. 23, Exs. 1, 2.)

**B.    The Hughes Claim**

16.    On August 31, 2022, T & J Pest Control treated Dirneshia Hughes's home for subterranean termites.

17.    On February 24, 2023, Ms. Hughes discovered that termites had damaged her home and the ceiling in her bedroom was falling.

18.    The claim was reported to Prime on February 24, 2023.

**C.    The Hughes Claim**

19.    Ms. Hughes has filed a lawsuit against T&J in the Circuit Court of Mobile County, Alabama, Case No. CV-2024-902446 (the "Hughes Claim"). (Ex. 3, Hughes Claim Complaint.)

20. After conducting an investigation, Prime determined that the issues discussed below impact coverage for the Hughes claim. In a reservation of rights letter dated April 20, 2023, Prime informed T&J of the coverage issues. (*See* Reservation of Rights Letter, Ex. 4.)

21. Prime is presently providing a defense to T&J in the Hughes Claim, subject, however, to its reservation of rights.

## **CLAIM FOR DECLARATORY RELIEF**

22. Prime incorporates each of the allegations set forth above as if fully set forth herein.

23. An actual dispute and controversy has arisen between Prime and Defendants recording coverage available under the Policy for the Hughes claim.

24. There is no coverage under the 2022-2023 Policy for the Hughes claim as the claims-made requirements of the Policy have not been satisfied.

25. As set forth above, the 2022-2023 Policy was issued on a claims-made basis, which requires claims to be made, reported, and occur within the Policy period for coverage to apply.

26. T&J's work at Ms. Hughes' home occurred on August 31, 2022, within the 2022-2023 Policy period; however, the damage was not reported until February 24, 2024—after the 2022-2023 Policy ended.

27. Therefore, as the claims-made requirements of the Policy were not complied with, there is no coverage under the 2022-2023 Policy for the Hughes claim.

28. There is no coverage under the 2023-2024 Policy for the Hughes claim as the occurrence requirement of the Policy has not been satisfied.

29. As set forth above, the 2023-2024 Policy was issued on a claims-made basis, which requires the accident to occur during the policy period for coverage to apply.

30. Furthermore, the Policy excludes coverage for claims arising from accidents occurring prior to the policy period.

31. T&J was offered one year of retroactive coverage under the 2023-2024 Policy for an additional premium of $697.93.

32. T&J rejected this offer of retroactive coverage.

33. As the August 31, 2022, service at Ms. Hughes' home occurred prior to the 2023-2024 Policy period, there is no coverage under the 2023-2024 Policy for the Hughes Claim.

34. There is no coverage under the policies for the property damage arising from T&J's completed work.

35. Exclusion 26 of the Policy bars coverage for "Bodily Injury and Property Damage occurring away from premises you own or rent, arising out of: a.

Your Product, if it is no longer in your physical possession; or b. Your Work, once it has been completed; or c. Any reliance upon any warranty or representation made concerning 'a' or 'b.'"

36. The plain language of Exclusion 26 provides that there is no coverage for property damage arising from T&J's work once the work has been completed.

37. Accordingly, there is no coverage under the Policies for T&J's completed work on Ms. Hughes' home.

38. There is no coverage under the policies for the property damage resulting from T&J's work.

39. Exclusion 27 bars coverage for "Property Damage to Impaired Property, arising out of … [a] defect, deficiency, inadequacy, or dangerous condition in Your Product or Your Work."

40. Accordingly, Exclusion 27 applies and there is no coverage under the Policies for any deficiency, defect, or dangerous condition in T&J's work that caused damage to Ms. Hughes' home.

41. However, Ala. Admin. Code § 80-10-9.28 (2024) requires insurance coverage in the amount of $150,000 for businesses engaged in Control of Wood Destroying Organisms; Industrial, Institutional, and Household Pest Control; or Fumigation Pest Control.

42. T&J is a business engaged in Control of Wood Destroying Organisms; Industrial, Institutional, and Household Pest Control; or Fumigation Pest Control.

43. The liability limits of the Policies meet the minimum coverage requirements of Ala. Admin. Code § 80-10-9.28.

44. However, an actual, justiciable controversy has arisen concerning whether Ala. Admin. Code § 80-10-9.28 requires minimum insurance limits subject to the terms and conditions of the policy (such as the Policies at issue here), or whether the regulation functions as some type of "guaranty," thus requiring a minimum of $150,000.00 in insurance coverage without regard to the terms and conditions of the policy.

45. To the extent Prime is required to make payments for the Hughes claim pursuant to Ala. Admin. Code § 80-10-9.28, despite the coverage issues discussed herein, T&J is obligated to reimburse Prime for those payments.

46. The reimbursement provision of the Policies states "[i]n the event we provide coverage for a Claim and it is at any time determined that the Claim, or any part thereof, is not covered under the Policy, we expressly reserve the right to seek reimbursement of any Damages and/or Claim Expenses associated with any such Claim from any Insured."

47. Under the reimbursement provision, T&J will be obligated to reimburse Prime for payments made pursuant to Ala. Admin. Code § 80-10-9.28.

48. Based on the foregoing, a judicial determination is necessary and appropriate at this time to determine the respective rights and obligations of Plaintiff and Defendants under the Policy.

49. Pursuant to 28 U.S.C. § 2201, Prime requests a declaration from this Court that:

    a. There is no coverage under the 2022-2023 Policy for the Hughes claim as the claims-made requirements of the Policy have not been satisfied.

    b. There is no coverage under the 2023-2024 Policy for the Hughes claim as the occurrence requirement of the Policy has not been satisfied.

    c. There is no coverage under the policies for the property damage arising from T&J's completed work.

    d. There is no coverage under the policies for the property damage resulting from T&J's work.

    e. Ala. Admin. Code § 80-10-9.28 requires minimum insurance limits, but subject to the terms and conditions of the Policies, and does not function as a "guaranty," thus requiring a minimum of $150,000.00 in insurance coverage without regard to the terms and conditions of the policy

    f. To the extent Prime is required to make payments for the Hughes Claim pursuant to Ala. Admin. Code § 80-10-9.28, despite the coverage issues discussed herein, T&J is obligated to reimburse Prime for those payments.

## **PRAYER FOR RELIEF**

WHEREFORE, Prime prays for the following relief:

1. For a declaration that:

   a. There is no coverage under the 2022-2023 Policy for the Hughes claim as the claims-made requirements of the Policy have not been satisfied.

   b. There is no coverage under the 2023-2024 Policy for the Hughes claim as the occurrence requirement of the Policy has not been satisfied.

   c. There is no coverage under the policies for the property damage arising from T & J Pest Control's completed work.

   d. There is no coverage under the policies for the property damage resulting from T & J Pest Control's work.

   e. Ala. Admin. Code § 80-10-9.28 requires minimum insurance limits, but subject to the terms and conditions of the Policies, and does not function as a "guaranty," thus requiring a minimum of $150,000.00 in insurance coverage without regard to the terms and conditions of the policy

   f. To the extent Prime is required to make payments for the Hughes Claim pursuant to Ala. Admin. Code § 80-10-9.28, despite the coverage issues discussed herein, T&J is obligated to reimburse Prime for those payments.

2. For costs incurred herein; and

3. For such other and further relief as the Court deems just and proper.

Respectfully submitted this the 21st day of May 2025.

>*/s/ Jonathan K. Corley*
>Attorney for Plaintiff
>Prime Insurance Company

**OF COUNSEL:**
WHITTELSEY & CORLEY, LLC
Post Office Box 106
Opelika, Alabama 36803–0106
T: (334) 745–7766
F: (334) 745-7766
E: jcorley@wwp-law.com